**H. K. PORTER COMPANY, Inc.,**
Plaintiff-Appellee,

v.

**The GOODYEAR TIRE & RUBBER COMPANY, Defendant-Appellant.**

No. 19911.

United States Court of Appeals,
Sixth Circuit.

Jan. 27, 1971.

Paul L. Ahern, Chicago, Ill., for defendant-appellant; Timothy F. McMahon, Cleveland, Ohio, Richard Russell

Wolfe, Chicago, Ill., on brief; Thompson, Hine & Flory, Wolfe, Hubbard, Voit & Osann, Chicago, Ill., of counsel.

Lawrence F. Scinto, New York City, for plaintiff-appellee; Laurence E. Oliphant, Jr., Cleveland, Ohio, Charles B. Cannon, Paul E. O'Donnell, Jr., New York City, on brief; Squire, Sanders & Dempsey, Cleveland, Ohio, Ward, McElhannon, Brooks & Fitzpatrick, New York City, of counsel.

Before PHILLIPS, Chief Judge, and WEICK and McCREE, Circuit Judges.

McCREE, Circuit Judge.

The Goodyear Tire and Rubber Company appeals from a judgment declaring valid and infringed certain patents for the manufacture of "Flexible Hose," a product designed as a replacement for factory-installed original equipment automobile radiator hose.

On August 21, 1962, United States Patent No. 3,050,087 was granted to David M. Caplan as inventor of "Flexible Hose," and three years later, on July 13, 1965, Patent No. 3,194,705 was granted to him as inventor of a method and apparatus for manufacturing this flexible mold-formed radiator hose. Five months later, H. K. Porter Company, the current owner of both patents, brought this action against Goodyear, charging infringement of both the '087 and '705 patents. Goodyear denied infringement and attacked the validity of the patents. After an extensive trial, the District Court held the patents valid and infringed, and granted declaratory and other injunctive relief. We affirm.

Replacement radiator hoses play an important role in the automobile repair field. Original equipment hoses often fail because of internal pressure, vacuum collapse, the corrosive effect of radiator additives on rubber tubing and other causes. These hoses are designed to the specifications of a particular make and model of automobile. Replacement hoses, on the other hand, to be commercially successful, must be capable of substantial standardization. They must not only be able to resist bursting under pressure and to avoid vacuum collapse, but they must also resist bending collapse when they are contorted to permit their being fitted into the varying distances between the engine blocks and radiators of different manufacturers' cars. These technical challenges stimulated intensive inventive activity, some of which gave rise to this litigation.

Considerations of flexibility mandated the use of a material possessing this characteristic of rubber and having sufficient strength to resist bursting under pressure and resistance to the corrosive effect of radiator additives. Also, rigidity is necessary to avoid vacuum collapse, and this requirement presented a difficult problem. In original equipment radiator hoses, an internal spring is commonly used to impart this property. However, original equipment hoses are of uniform length and need not possess the flexibility for adjustment of length as must replacement hoses. Accordingly, the internal spring device was found unacceptable and an external helical reinforcing wire coil spring was considered to give the desired rigidity without preventing flexibility. The precise problem concerned finding a commercially feasible method of incorporating this coil spring appropriately into the rubberoid body of the hose.

Caplan testified that he accomplished this in the following manner:

A. What we have here is a radiator hose formed of its component parts—I should say simultaneously formed and cured of its component parts, and has a section that is interiorly and exteriorly convoluted, that has a reenforcement embedded in the apex of those convolutions, and the only covering over that reinforcement is part of the same material which was used to form the body of the tube.

Q. Is that what you consider to be your invention?

A. Well, I'm not great shakes on these statements, but all I know is

that I took something that wasn't there and made it and it was a success in the field and made a great difference in the industry. I think it was invention.

■ Goodyear, which produced a similar product, challenges the validity of the patents in suit on three grounds: prior invention and disclosure; anticipation by the prior art; and obviousness. It also asserts as a defense against the infringement claim the doctrine of file wrapper estoppel. We consider each of these grounds separately, and conclude that the patents are valid and that they have been infringed.

*Prior invention and disclosure.* Goodyear claims that one Robert E. Roberts invented the same process before Caplan, and that he disclosed this invention to Caplan and to plaintiff's predecessor in interest, the Voit Rubber Company, in 1950 and 1951. Here, the issue of disclosure presents a question of fact, because evidence was introduced in support of the contentions of both parties. The District Court resolved the factual conflict against Goodyear, and its findings are not clearly erroneous. Rule 52(a), Fed.R.Civ.P.

Goodyear's claim of prior invention rests primarily on Roberts' victory over Caplan in Patent Interference No. 91,-640. This proceeding concerned an alleged conflict between Roberts' Patent No. 2,936,812 and claims 1 through 4 of Caplan's '705 patent. The Roberts patent prevailed, and the Caplan '705 application was therefore modified and, as modified, was the basis of the patent issued by the Patent Office. That agency specifically took notice of the interference proceeding, and held that Caplan's patent was valid nevertheless. The decisions of the Patent Office, of course, enjoy a strong presumption of validity under 35 U.S.C. § 282. Simplicity Mfg. Co. v. Quick Mfg., Inc., 355 F.2d 1012, 1014 (6th Cir. 1966). Here the District Court found that all of the elements of the challenged claims of the '705 patent were not found in the Roberts '812 patent, or in any other single one of the

five prior patents relied on by Goodyear, and this finding is supported by evidence in the record. Any conflict between the language of claim 16 of the '812 patent and the '705 patent assumes significance only if the invention disclosed by the language, drawings, and specifications of the '812 patent conflicts with the invention claimed and disclosed in the '705 patent. *See, e. g.,* FMC Corp. v. F. E. Myers & Bros. Co., 384 F.2d 4, 13 (6th Cir. 1967). Here the District Court found, and we agree, that there was no such conflict.

*Anticipation by prior art.* Goodyear's claim of anticipation by prior art also rests primarily on Interference No. 91,-640. It argues that claims involved in an interference are prior art against the loser of the interference. In re Risse, 378 F.2d 948, 956, 54 C.C.P.A. 1495 (1967). But that proposition misses the point raised by plaintiff; that its invention, as ultimately patented, is inventively different from the Roberts '812 patent.

The facts, as found by the District Court, support plaintiff's contention. It found that the Roberts hose is pre-formed and hand-corrugated on a mandrel and then placed in a mold for curing and vulcanization. This process may be referred to as mold-curing. The Caplan hose, on the other hand, is mold-formed by putting the separate components in a mold, in which they are molded and vulcanized in the same operation. These findings are supported by evidence in the record and are not clearly erroneous.

■ Appellant contends that the clearly erroneous standard for reviewing findings of fact, mandated by Rule 52(a), Fed.R.Civ.P., is inapplicable with reference to findings based solely on documentary evidence. The law in this Circuit is well settled to the contrary. United States Steel Corp. v. Fuhrman, 407 F.2d 1143, 1145–1146 (6th Cir. 1969); Commissioner v. Spermacet Whaling & Shipping Co., S/A, 281 F.2d 646 (6th Cir. 1960).

*Obviousness.* Under 35 U.S.C. § 103, a patent cannot be held valid if the subject matter, although different from the prior art, is such that it would have been obvious to a person of ordinary skill. Goodyear, again relying on the Roberts '812 patent, contends that Caplan's invention is obvious under the test established in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In that case the Supreme Court described the inquiries required by § 103:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

383 U.S. at 17–18, 86 S.Ct. at 694.

In the case at bar, the factual findings required by § 103 were made by the District Court. Then the Court concluded:

> 58. The Court finds that the Caplan inventions, as exemplified in the '087 and '705 patents, would not have been obvious to a man skilled in the radiator hose art in 1953 to 1954. The combination of these isolated features of the prior art and original additions thereto, which produced the '087 and '705 patents, would not have been obvious to one skilled in the radiator hose art. In this connection, it is relevant that the Caplan inventions enjoyed immediate and substantial commercial success. They increased the production rate of flexible radiator hoses significantly. Upon introduction into the market, they immediately began to replace the prior hand-built

corded fabric hoses. Indeed, the defendant itself was a substantial customer of the Caplan hoses. Prior to the Caplan inventions, the defendant and many others made long and unsuccessful efforts to develop hoses of their own. The existing flexible rubber hoses were unsatisfactory, were expensive, and difficult to produce. There was a long-felt need for an improved and economical flexible radiator hose, and many individuals have attempted to produce one over an extensive period of time. The evidence of a long-felt need and substantial efforts by many individuals to produce an improved flexible radiator hose gives weight to the Court's inference and conclusion that the Caplan inventions would not have been obvious to a person skilled in the flexible radiator hose art in 1953 and 1954. Rather, the Court has concluded that the Caplan inventions were novel, creative, and inventive and were, indeed, surprising to those skilled in the art at the time they were developed.

This conclusion is supported by the facts found and is correct under applicable law.

*File wrapper estoppel.* Goodyear argues that the doctrine of file wrapper estoppel prevents H. K. Porter from objecting to Goodyear's product, because it incorporates features which were abandoned by Caplan in the process of and for the purpose of obtaining a patent from the Patent Office. *See* Kaiser Industries Corp. v. McLouth Steel Corp., 400 F.2d 36 (6th Cir. 1968). Specifically, Goodyear claims that the Caplan patents are limited to "all-rubber" or "single layer" hoses. This contention is without merit. As the District Court found, neither Caplan patent is so limited, and the knit fabric reinforcement employed by Goodyear on its hose is not inventively distinguishable from that patented by Caplan. The District Court also rejected Goodyear's contentions that its wire-reinforcement differed from that in plaintiff's hose and that its hose does not radially expand during the

mold-forming process as plaintiff's hose does.

Goodyear does not strenuously argue that there was no infringement if the patent is held valid. We agree with the District Court's findings of fact and conclusions of law, and we affirm that court's decision that the patents in question are valid and have been infringed. The judgment of the District Court is affirmed, and the cause remanded to the District Court for such further proceedings as may be necessary.

Affirmed and remanded.