**H. K. PORTER COMPANY, INC.,**
Plaintiff-Appellee, Cross-Appellant,

v.

**The GOODYEAR TIRE & RUBBER COMPANY, Defendant-Appellant, Cross-Appellee.**

Nos. 75–1609, 75–1610.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 2, 1976.

Decided June 9, 1976.

Rehearing and Rehearing En Banc Denied July 19, 1976.

William D. Ginn, Leslie W. Jacobs, Thompson, Hine & Flory, Cleveland, Ohio, Paul L. Ahern, Wolf, Hubbard, Leydig, Voit & Osann, Chicago, Ill., for appellant.

Laurence E. Oliphant, Jr., Squire, Sanders & Dempsey, Cleveland, Ohio, Lawrence F. Scinto, Fitzpatrick, Cella, Harper & Scinto, New York City, for appellee.

Before PHILLIPS, Chief Judge, WEICK and McCREE, Circuit Judges.

WEICK, Circuit Judge.

On November 13, 1965 H. K. Porter Company, Inc. (Porter) sued Goodyear Tire & Rubber Company (Goodyear) in the federal District Court for Northern Ohio, Eastern Division in Cleveland, for infringement of two of its patents on flexible mold-formed radiator hoses. The Court found that the patents were valid and infringed by Goodyear, granted an injunction against further infringement, and ordered an accounting. On appeal, we affirmed in an opinion written for the Court by Judge McCree, reported in 437 F.2d 244 (6th Cir. 1971). Goodyear filed in this Court a petition for rehearing or for remand to the District Court, alleging that this Court had over-looked and misapprehended pertinent facts and law, and that Porter's presentation to the District Court and to this Court involved misrepresentation and other misconduct. We denied the petition for rehearing or for remand on April 16, 1971, and the Supreme Court denied certiorari, 404 U.S. 885, 92 S.Ct. 203, 30 L.Ed.2d 169 (1971).

Upon the remand in 1971 Goodyear filed its Rule 60(b) motion in the District Court to vacate the judgment for fraud practiced on the Court, a copy of which motion was filed in this Court. The District Court denied the Rule 60(b) motion on June 28, 1971.

On February 22, 1972 the District Court appointed a Special Master to hear the accounting. After conducting extensive hearings the Master filed his report on October 26, 1973 recommending an award to Porter of $720,206.14 plus interest at 6% from the date of his report.

Nearly three years after the denial of its first Rule 60(b) motion, namely on May 14, 1974, Goodyear filed in the District Court its second Rule 60(b) motion alleging fraud on the Court. At that time Goodyear also filed an independent action in the District Court for the District of Colorado, attacking the judgment of the Ohio District Court on the same ground. The Colorado Court would not have subject matter jurisdiction to declare void for fraud the judgment of the Ohio District Court. The purpose of the Colorado suit was to seek consolidation thereof with the action by Porter against Gates Rubber Company (Gates) for infringement of the same patents, which action had been pending in Colorado since 1971. The Colorado District Court declined to consolidate the two actions, and Goodyear's independent Colorado action was then transferred with its approval to Northern Ohio. The Northern Ohio District Court then had before it both a Rule 60(b) motion and the independent action for the same relief which Goodyear sought in its suit filed in Colorado with a Court that had no jurisdiction of it. The Ohio Court dismissed the independent action, and in Goodyear's appeal therefrom this Court affirmed on August 25, 1975, in case No. 75–1637.

Goodyear's claim of fraud was based upon the alleged willful failure of Porter to disclose during discovery prior to the trial of Porter's patent infringement action, certain documents which it (Goodyear) claimed were vital to its defense, and which were in Porter's possession, and upon alleged perjury by David Caplan, the inventor of Porter's hose patents. Goodyear learned about these documents from examining the exhibits in the Gates case in Colorado. Goodyear filed a motion for discovery in the District Court for Northern Ohio, to prove the claims in its Rule 60(b) motion.

On December 13, 1974 the District Court held a hearing for the purpose of permitting Goodyear to show that additional discovery after final judgment was appropriate. On January 21, 1975 the Court entered an opinion and order holding that Goodyear had made no showing of fraud and therefore was not entitled to additional discovery under Rule 60(b). The motion was therefore denied.

Meanwhile, on July 18, 1974 the District Court adopted the findings of the Special Master and awarded the recommended relief to Porter after adjusting the damage award to $681,331.30. Both parties appeal from the judgment as to damages. Goodyear also appeals from the denial of its second Rule 60(b) motion. We affirm in both appeals with a remand to the District Court for consideration of the allowance to Porter of expenses and attorney's fees incurred in the denial of discovery after judgment in connection with the Rule 60(b) motion.

I

Goodyear points out that under Rule 60(b) a judgment may be attacked by an independent action alleging fraud upon the court, and that allegations of such fraud entitle it to discover documents relevant to the charge. Goodyear contends that the District Court erred in holding that it was required to make a prima facie showing of fraud in order to be entitled to discovery after judgment.

■ When the District dismissed the suit transferred from Colorado because the allegations duplicated those in the motion then before it, such action did not change the substantive rights of the parties; a motion under Rule 60(b) claiming fraud may be treated interchangeably with an independent action. *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 n. 7 (5th Cir. 1970). While Goodyear has not cited, and we have not found, any cases dealing with the right to post-judgment discovery, we must recognize that a request for discovery for the purpose of attacking a final judgment involves considerations not present in pursuing discovery in a pending action prior to a judgment. Primary among these considerations is the public interest of the judiciary in protecting the finality of judgments. Particularly is this true in the long-drawn-out patent infringement case litigated through all of the Federal Courts where prior to judgment there had been extensive discovery.

■ Goodyear is plainly not entitled to discovery of documents it did not request in pretrial discovery. The only documents relevant to this fraud claim are those which Goodyear requested earlier but which Porter allegedly wilfully failed to produce. Goodyear apparently believes that it is entitled to broader discovery so that it can fish for other documents arguably within the class of documents which it could have requested in pretrial discovery. We do not consider the granting of post-judgment discovery a proper vehicle for reviewing the integrity of pretrial discovery. Allegations of nondisclosure during pretrial discovery are not sufficient to support an action for fraud on the court. 11 C. Wright & A. Miller, Fed.Prac. & Proc. § 2870, p. 254 (1973); nor is the alleged perjury of a witness a ground for an action for fraud upon the court. *Id.* at 256.

■ Goodyear adds to its allegations of nondisclosure, misrepresentation and perjury, the allegation that Porter's attorneys knew of and sponsored these misdeeds. This is indeed a serious charge and ought not to be recklessly made without substan-

tial support. Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court. *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972); *see* Restatement, Judgments § 126 comment c (Supp. 1948).

■ A Rule 60(b) motion is addressed to the sound discretion of the Court. *Jacobs v. DeShetler*, 465 F.2d 840, 843 (6th Cir. 1972). Likewise, the scope of discovery is within the discretion of the trial judge. *Chemical & Indus. Corp. v. Druffel*, 301 F.2d 126, 129 (6th Cir. 1962). When two parties have opposed each other in a protracted lawsuit tried to judgment, and the losing party's motion for relief under Rule 60(b) does not indicate to the Judge who presided at the trial that his Court has been victimized by the fraud of the winning party, it is well within his discretion to require the moving party to make a showing in support of its allegations before requiring the prevailing party to submit a second time to extensive discovery to protect his judgment.

■ We do not have here a case wherein only discovery would allow Goodyear to prove an evidentiary basis for its allegations. Goodyear claims that it has found in the records of the Gates case evidence that Porter perpetrated a fraud on the District Court; in fact, these Colorado documents appear to have triggered the instant motion. Under the circumstances we are of the opinion that the District Court, finding no precedent for the situation before it, ruled fairly and wisely in asking Goodyear to show that the Colorado documents support its allegations of fraud on the Court as a precondition to further discovery.

■ Thus it is only necessary for this Court to review the evidence presented in the motion hearing to determine whether the District Court abused its discretion in holding that no evidentiary basis was shown warranting further discovery. Goodyear complains that it was held to a standard of proving a prima facie case of fraud in order to obtain discovery. While the Court suggested such a test, the Court did not have to apply such a test because it found that Goodyear had shown *no* proof of fraud; thus under any evidential burden Goodyear would not be entitled to discovery.

In considering the evidence presented, the question to be resolved is whether Porter deliberately disobeyed an order of the District Court relating to discovery. We will not review the parties' voluntary dealings with each other pursuant to discovery. Parties can negotiate with each other designating broad categories of documents for discovery; but when the Court is called upon to order discovery, broad and vague categories subject to disputes of interpretation should be trimmed of ambiguity and overbreadth, as District Judge Battisti did in denying Goodyear's requests for discovery orders of documents relating to litigation between Porter and Robert E. Roberts. We thus determine Goodyear's claims of fraudulent nondisclosure and misrepresentation as follows:

1— Goodyear claims that Porter knowingly withheld numerous documents relating to a patent interference proceeding between Caplan and Roberts, requested by Goodyear. Goodyear requested a court order to discover such documents and District Judge Battisti denied the request, holding that the request was overbroad. Goodyear did not seek a further order requiring Porter to produce any documents relating to such proceeding. Therefore we will not review the failure of Porter to provide to Goodyear documents which it did not request.

2— Goodyear claims that Porter knowingly withheld documents relating to an investigation by Porter into the development of the Roberts patent and possible disclosure of Roberts' developments to Caplan while both men were employed by W. J. Voit Rubber Company. Goodyear never requested documents relating to this investigation, nor did Goodyear request documents concerning Roberts' patent claims. No court order was issued which arguably could cover these documents. Goodyear's claim that these documents fall within its request for documents pertaining to devel-

opment and reduction to practice of the Caplan hose, is arguable at best. We find no evidence of fraud in the failure of Porter to produce these documents.

3— Goodyear claims that Porter knowingly concealed documents relating to a lawsuit in Delaware between Porter and Roberts. Judge Battisti denied as overbroad Goodyear's request to order discovery of these documents, and Goodyear did not request a further order. We find no evidence of fraud relating to such documents.

4— Goodyear claims that Porter listed more than two hundred documents in the Gates case, which documents it intended to claim were privileged or protected by the work product rule, and that most of these documents were not identified when Goodyear had made the same request. Because the scope of discovery was much broader in the Gates case it is to be expected that many documents identified as privileged there would not have been so identified in this action. No court order was entered relating to these documents in this case. Goodyear's bare assertion that most of these documents should have been identified in the instant case does not support an inference of fraud on the Court. Goodyear's insistence that all documents dated prior to 1965 appearing on the list given to Gates, were relevant to this case, is not supported by any demonstration of possible relevance.

5— Goodyear claims that it requested all documents relating to licensing of the patent, and that Gates made the same request, but that Gates received more documents than Goodyear received. We find in the record no request to the District Court to order production of such records. Goodyear has shown no fraud on the Court in this allegation.

Turning to the allegation that Caplan perjured himself in testifying in this action, with the knowledge of Porter and Porter's counsel, we have examined the portions of Caplan's testimony in this suit and in the Gates case, and have noted the alleged inconsistencies in his testimony as to the occurrences in the Voit Company during early

1951. We have also examined the memoranda written at that time which, Goodyear claims, show that Caplan was untruthful when he testified that he was not working on the flexible radiator hose project in early 1951. Caplan's testimony in the two cases is not inconsistent when considered along with the differences in the questions to which he was responding, and considering the difficulty of recalling events which occurred twenty-three years prior to his testimony. The memoranda establish at best the fact that Caplan was kept informed of the progress of the project; this is consistent with his testimony that he was hired to work on the project, although he was working on other projects during early 1951. Caplan's testimony is supported by Roberts' deposition which stated that Caplan did not work on the flexible radiator hose project in early 1951. We find no evidence of perjury by Caplan, much less subornation of perjury by Porter or Porter's counsel.

We have the spectacle of Goodyear filing an independent action against Porter in the District Court of Colorado under Rule 60(b), to invalidate, on the ground of fraud, the judgment of the District Court in Ohio adjudging Porter's patent valid and infringed, which judgment had been affirmed by this Court and certiorari had been denied by the Supreme Court, and during the pendency in the Ohio District Court of Goodyear's second motion filed under Rule 60(b) to set aside the judgment on the ground of fraud. To say the least, this was an anomalous procedure. It is apparent that the Colorado Court had no such jurisdiction over the final judgment of the Ohio Court which had jurisdiction.

Goodyear appeared by counsel in Colorado and moved the District Court to consolidate its independent action with the Gates patent infringement case. The District Court denied the motion to consolidate, and the Gates case proceeded to trial on its merits.

Fraud was alleged as a defense to Porter's patent in the Gates case. District Judge Rubin, who presided at that trial, found no proof of fraud, stating:

(K) Defendant has not sustained by evidence the defense of "fraud" or "unclean hands" in connection with the preparation or prosecution of the applications for the '087 or the '705 patent or in connection with the trial of *Porter v. Goodyear*, supra. (187 U.S.P.Q. at 719).

We note that the availability to Gates of all of these supposedly vital documents prior to the trial in the District Court of Colorado was of no advantage to Gates for the judgment in that case was in favor of Porter, upholding again the validity of the Caplan patents. *H. K. Porter Co. v. Gates Rubber Co.*, 187 U.S.P.Q. 692 (D.Colo.1975).

Contrary to the claim of Goodyear, District Judge Lambros did not summarily rule on its second Rule 60(b) motion without a hearing. At the close of the December 13th hearing he stated in part:

> In determining whether or not there is at least a prima facie case made out which would require a full and complete discovery of many of these questions as to what documents were in fact in the possession of the plaintiff, its attorneys, agents or officers that were subject to discovery, if we determine there is some prima facie showing here, I would then want to first ascertain just what documents in the times in question were available. Those documents would have to be inspected and tested against the particular order of discovery, as well as the communications between the parties where representations were made as to the production of documents within their custody.
>
> But further, before reaching that determination, I want to consider that which has been said here today, the briefs, the exhibits which you have presented. But more importantly, in examining these contentions in what you have presented, I also want to go back to the original file and review the history of this particular case, the motions and the discovery proceedings that took place, and I think perhaps I may even have to examine some of the testimony which appears in the record of trial to determine whether or not the allegations are meritorious.
>
> Gentlemen, I am going to take this matter under advisement at this time and study these claims before I make any further observations, because of the implications of this motion.

The six volumes of appendices filed in the present appeal, in addition to the record of the original patent infringement trial, indicate the problems faced by the District Judge.

In his Memorandum Opinion and Order the District Judge gave careful consideration to the various contentions urged by Goodyear and the documents and the evidence which it offered in support thereof. He stated:

> In view of the extensive discovery already had in this case, the fact that the opinion of this Court was entered over five years ago, and the unusual basis for relief raised by defendant, to allow a party to reopen the litigation for discovery should not be a course of conduct too readily approved.
>
> Upon due consideration and evaluation of defendant's contentions and the evidence amassed in support thereof the Court finds that there has been no proof of fraud adduced, and therefore no further discovery will be allowed. The motion is denied.
>
> As noted previously, the relief afforded under Rule 60(b) is extraordinary and may properly be granted only when the movant can demonstrate that the conduct challenged hindered it from making good a claim or defense. *Wilkin, supra*. A party is entitled to relief only under exceptional circumstances. (A. 110)

In denying Goodyear's motion for reconsideration, the District Judge stated:

> The Court has reconsidered its earlier opinion and reaffirms its position. No party to a proceeding may begin a new round of procedural attacks on a judgment without demonstrating good cause for those attacks. While the Court originally scheduled argument for the purpose of evaluating discovery, once the Court

had fully familiarized itself with defendant's position it appeared that there was no need for further proceedings. The motion was founded on hope and did not contain the necessary support. Even assuming that there may have been several documents not supplied, in light of the vagueness of the requests, the incredible volume of discovery and the fact that the documents cited were cumulative in nature, there is no support for an inference of fraud. (A. 116–17).

Goodyear has made serious but unsupported charges of fraud, perjury, and subornation of perjury against Porter, the inventor, Caplan, and the attorney for Porter. To permit discovery after judgment in addition to the extensive discovery ordered during the trial of the patent infringement case it was at least necessary for Goodyear to present some proof to establish its unsupported charges.

The District Judge who presided over this protracted trial and who considered the evidence offered by Goodyear in support of its Rule 60(b) motion, did not believe that any fraud on the Court had been perpetrated on him. As an experienced trial judge he was in the best position to know. He was also in a good position to evaluate whether the production of the documents which Goodyear claims Porter ought to have produced, or the alleged perjury, would have made any difference in his holding that Porter's patents were valid and infringed.

In our opinion the District Court did not err in its finding that Goodyear proved no fraud on the Court, and did not abuse its discretion in denying Goodyear's request for post-judgment discovery.

No fraud was perpetrated on our Court.

II

■ Goodyear contends that the District Court erred in its assessment of damages because Porter failed to meet its burden of proof. In this appeal the award must be upheld if the record contains substantial evidence to support it, and the findings of fact will not be set aside unless they are clearly erroneous.

The District Court awarded a reasonable royalty to Porter of 8% of Goodyear's infringing sales in 1962–63 and 1968–71, and awarded lost profits for the years 1964–67 of $387,110. Prior to 1962 Goodyear had purchased its flex hose requirements from Porter to sell under its own brand name. In 1962 Goodyear began to produce its own hose, cutting its purchases from Porter. By 1968 Porter was purchasing hose from Goodyear. It was not until 1964 that lost profits exceeded a reasonable royalty; hence the royalty measure of damages was applied for 1962–63 as required under 35 U.S.C. § 284. Lost profits were not awarded subsequent to 1967 because Porter did not have the capacity to produce hose for Goodyear at that time, having sold its Ridbo works, which produced the hose, in early 1968. Thus damages were computed as royalties for 1968–70.

■ Lost profits cannot be computed with certainty; they are hypothetical by definition. The "reasonable certainty" test suggested by Goodyear is no more than a test of probability, as it must be in dealing with a hypothetical situation. This Court applied the proper test in *Horvath v. McCord Radiator & Mfg. Co.*, 100 F.2d 326, 335 (6th Cir. 1938), where it held:

McCord is an infringer and the burden must be placed upon it as a wrongdoer and it is the duty of the court to find for Horvath with reasonable approximation that to which he is entitled and in so doing, there is no duty to exercise meticulous care to avoid a hardship on McCord.

*See also Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931).

■ Goodyear contends that the finding that Goodyear would have purchased all of its hose requirements after 1962 from Porter is not supported by the evidence. The evidence shows that Goodyear had purchased all of its requirements from Porter prior to 1962, that Goodyear had found that Porter's product was better than competing hose, and that Goodyear was interested in selling high-quality hose. These facts constitute substantial evidence to support the

finding that Goodyear probably would have continued to purchase hose from Porter had Goodyear elected not to infringe the Porter patents.

Goodyear's contention that it could have devised a noninfringing hose in a matter of weeks in 1962 if it believed that its product infringed Porter's patents does not affect the substantial basis for the Court's finding. The District Court was entitled to discount this claim; it is noteworthy that none of the other major competitors in the field in 1962 had demonstrated that Porter's hose could be equalled in performance without infringement.

Next, Goodyear contends that the data upon which the lost profits were computed is unreliable. The original sales records of Porter's hose operations could not be located inasmuch as Porter had sold its hose manufacturing facilities in 1968. Goodyear insinuates improper motives on Porter's part in "destroying" such records after winning this case on the liability issue. The District Court made no finding as to the reason for the loss of the records, or as to culpability for such loss. We cannot, upon appeal, infer that an improper motive was behind the loss of these sales records, absent any proof in the record of such motive.

The evidence as to the amount of lost profits consisted of a series of commodity statements from Porter's records showing sales levels and gross margins from the years in question on the sale of hose. These were contemporaneous business records prepared for the purpose of facilitating management decisions. These statements were supported and supplemented by the testimony of Mr. Morton, a certified public accountant, who used the statements to extrapolate lost profits for the years in question.

Goodyear's contention that only the original invoices can prove the sales levels and category of sales in which Goodyear's purchases were placed is untenable. This contention is a thinly-veiled attempt to invoke the "best evidence rule" requiring the production of the original document when the contents of that document are at issue. Here the contents of a particular document are not at issue; any document which can establish sales and profit levels is admissible. Morton testified that the commodity statements were adequate for the purpose of estimating lost income from Goodyear sales. This testimony constitutes a substantial basis for the finding that the statements were reliable for the purpose of estimating lost profits. Goodyear's contention that the statements are unreliable because Morton testified that he could not certify them is frivolous. Certification is a procedure of the accounting profession; it is not a precondition to the admissibility of financial records in evidence.

Goodyear also contends that several Porter executives testified that they would not rely upon the accuracy of the commodity statements. Mr. Davison testified that he would not vouch for the accuracy of the 1967 statement because he did not prepare it; he stated that he would vouch for the accuracy of the 1968 statement because he prepared it. Mr. Morrow's testimony related to the usefulness of a statement containing allocated costs to reflect expenses accurately. It is common knowledge that the allocation of fixed costs to various products is an artificial device; nevertheless, allocation of fixed costs is a recognized accounting technique relied upon by businessmen in making important business decisions. Mr. Morrow's testimony that the statements may not be useful for comparing selling expenses with private-label expenses does not impeach the evidence that the commodity statements may accurately reflect profits when certain fixed costs are removed, as was done by Mr. Morton.

Finally, Goodyear asserts that there was no evidence that sales to Goodyear in 1965–67 were classified in the Trade Brand Account (TBA) rather than in the interworks or branch sales categories of sales; each of these categories carried a different profit margin. Mr. Morton testified that he assumed that sales to Goodyear were TBA sales because Porter's accountants had told him that Goodyear sales were customer

sales rather than inter-works or branch sales, and because sales in either of the latter two categories were not large enough to include the sales to Goodyear. Furthermore, the sales to Goodyear were shipped directly from the plant, the practice employed in shipping TBA orders. The District Court's determination that sales to Goodyear were classified as TBA sales in 1965–67 was not clearly erroneous.

 Goodyear claims that the royalty rate of 8% was unreasonable and was not supported by the evidence. Porter's expert witness on patent royalties testified that 15% for both patents was the minimum royalty which would be acceptable to Porter, considering the high profit margin on the product. Goodyear's experts testified that a 15% royalty was unreasonable and that many other license agreements contained royalties of 1% to 3%; however, Mr. Wilson testified that the royalty amount depended upon the economic advantages of the deal to the negotiating parties. Balancing the economic position of Porter and Goodyear, the Master found that the parties would have agreed to a royalty of 8%. We agree with the District Court that, considering the evidence presented to the Master, his determination that a reasonable royalty was 8% is not clearly erroneous.

 Turning to Porter's assignments of error, we must determine whether Porter was entitled to increased damages under 35 U.S.C. § 284 because Goodyear's infringement was willful. The Master and the District Court found that the infringement was not willful, and this finding cannot be disturbed if supported by substantial evidence. Goodyear produced letters from in-house counsel and outside counsel that its hose would not infringe a valid patent of Porter. This evidence is competent to show that Goodyear had an "honest doubt" as to the validity of the patents and as to non-infringement. *General Elec. Co. v. Sciaky Bros., Inc.,* 415 F.2d 1068, 1073 (6th Cir. 1969). Whether Goodyear really had an honest doubt was very much in dispute but it was a credibility issue for the Master and the District Court to determine. Their findings that Goodyear had an honest doubt are supported by substantial evidence and are not clearly erroneous.

 Porter also contends that the Master erred in ruling that the law did not permit him to increase damages to account for the present value of amounts earned in the infringement period. Porter believes that adequate compensation must include an adjustment for the fact that, had Goodyear paid damages to Porter as profits and royalties during the infringement period, Porter could have invested that money to earn more, rather than Goodyear having the use of that money during the intervening years. The law recognizes the earning power of money in allowing interest awards on money judgments; however, the law does not recognize the impact on judgments of inflation which occurred prior to the judgment. This non-recognition is justifiable because there is no guarantee that, had Porter received the money due it in 1962–71, it would have been able to protect the value of that money from the effects of inflation other than by use of the money as investment capital.

Since it is precisely the investment value of money which is protected by the statutory provisions for interest on judgments, we find that the provisions for interest are the legal means to compensate for losses incurred by lapse of time between infringement and judgment. The statutory interest rate applies only to damages for nonwillful infringement, beginning at the time the Special Master's report is filed. *Wm. Bros. Boiler & Mfg. Co. v. Gibson-Stewart Co.,* 312 F.2d 385, 387 (6th Cir. 1963). Thus the award of interest from the date of the filing of the Master's report was correct.

 Rule 37(a)(4) Fed.R.Civ.P. contains a mandatory requirement for the allowance of expenses and attorney's fees to the prevailing party when the motion is either granted or denied. It provides:

*Award of Expenses of Motion.* If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney

advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

When the District Judge denied the motion for discovery he should have allowed expenses, including reasonable attorney's fees to Porter, unless he found that such an award would be unjust. He made no such finding.

The judgment of the District Court is affirmed in both appeals except as to the issue of allowance of expenses and attorney's fees to which Porter may be entitled under Rule 37(a)(4), and the cause is remanded with instructions to make such determination.

After the District Court has determined such issue Porter may file in this Court an application for allowance of expenses, including attorney's fees incurred in securing the affirmance of the judgment denying discovery. Jurisdiction is reserved for such purpose.

In No. 75–1609, Goodyear's appeal from an order of the District Court denying its motion under Rule 60(b), all costs are assessed against Goodyear. In No. 75–1610, Porter's cross-appeal from the accounting ordered by the District Court, each party shall pay the cost of producing its own briefs; and one-half of the balance of the costs is assessed against each party.

## ORDER DENYING PETITION FOR REHEARING

No active Judge of this Court having requested that a vote be taken on the suggestion for en banc consideration of the petition for rehearing, said petition for rehearing was considered by the panel.

Goodyear claims in its petition for rehearing that this Court suffered from "obvious confusion" and "serious misapprehensions of fact and law" in instructing the District Court upon remand to determine whether or not to award expenses to Porter under Rule 37(a)(4), Fed.R.Civ.P. Said Rule 37 assesses against the losing party in a Rule 37 motion to compel discovery the expenses in resisting the motion unless the Court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust. Goodyear asserts that it never made a Rule 37 motion to compel discovery in this case, and therefore can not be assessed expenses under Rule 37.

The answer to this contention is that Goodyear itself admits that during the proceedings of November 8, 1974 in the District Court "Goodyear's counsel urged a ruling on its pending motion to compel discovery" (Goodyear reply brief at 3). Apparently Goodyear then believed that it was seeking a court order compelling discovery when it presented to the District Court its Rule 60(b) motion.

Goodyear devoted eighteen pages of its appeal brief and another eight pages in its reply brief to its argument that it was entitled to court-ordered post-judgment discovery upon its motion for Rule 60(b) relief. The sole authority for court-ordered discovery is contained in Rule 37. A fair reading of Goodyear's arguments leads to the conclusion that Goodyear sought a court order requiring Porter to submit to post-judgment discovery. Such an order could come only from the powers of the court under Rule 37. Goodyear argues that it did not file a Rule 37 motion, but only a Rule

60(b) motion, yet Rule 60(b) says nothing about discovery; thus Goodyear's argument that the District Court should have ordered discovery is an implicit request for the Court to exercise its power under Rule 37.

Goodyear argued in its appeal brief that its right to discovery under a Rule 60(b) motion should not be less than its right to discovery in a collateral lawsuit alleging fraud on the Court. Goodyear had filed a collateral lawsuit in Colorado and had filed a Rule 37 motion in that case. The case was transferred to the District Court in Cleveland considering Goodyear's Rule 60(b) motion, and the District Court dismissed the collateral suit as duplicitous of the Rule 60(b) motion. We agreed with that contention, stating that "a motion under Rule 60(b) claiming fraud may be treated interchangeably with an independent action" (at 1118).

After the collateral lawsuit was dismissed Goodyear continued to press for court-ordered discovery, apparently then believing that its Rule 37 motion had survived the dismissal and became applicable to the Rule 60(b) motion. Although Goodyear now argues that the Rule 37 motion did not survive the dismissal of the collateral action, we cannot find any basis for Goodyear's subsequent pursuit of a court order requiring discovery other than under such Rule 37 motion.

Goodyear submitted to the District Court and to this Court a voluminous list of documents which it claims to be entitled to discover. A party who asks a federal court to review the propriety of ordering discovery of a specified list of documents, is hardly in a position to deny that it has made a Rule 37 motion merely because it did not file a paper with the label "Rule 37" appearing on its face.

If Goodyear had prevailed on the issue of discovery of these particular documents and Porter had refused to comply, we do not doubt that Goodyear would have sought Rule 37 sanctions based upon the Court's order.

Goodyear's contention that it had the same right to discovery in the Rule 60(b) motion as in the collateral suit would seem to indicate that Goodyear needed no court order to pursue discovery, yet Goodyear sought such an order. The Federal Rules of Civil Procedure do not specify the nature of the right to post-judgment discovery, and Goodyear's action in seeking a court order in the face of such uncertainty is understandable. Nevertheless, when a party subjects an opposing party to the expense of litigating the propriety of discovery in a federal court the policy expressed in Rule 37 is furthered by awarding expenses against the losing party.

Goodyear's other contentions in its petition for rehearing were adequately treated in our opinion.

The petition for rehearing is denied.