USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2139

 RICHARD DUHAIME, ET AL.,

 Plaintiffs, Appellees,

 v.

 JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, ET AL.

 Defendants, Appellees,
 
 HOWARD M. METZENBAUM,
 
 Appellant.
 
 
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF MASSACHUSETTS
 
 [Hon. George A. O'Toole, Jr., U.S. District Judge]
 
 
 
 Before
 
 Selya, Boudin, and Stahl,
 Circuit Judges.
 
 
 
 Brian Wolfman, with whom Alan B. Morrison and Public Citizen
Litigation Group, were on brief for appellant.
 John G. Fabiano, with whom Peter A. Spaeth, Hale and Dorr LLP,
Ralph C. Ferrara, Edwin G. Schallert, and Debevoise & Plimpton,
were on brief for appellees.

June 28, 1999

 
 

 STAHL, Circuit Judge. This appeal is an offshoot of a
massive securities fraud, fraud, and breach of fiduciary duties
class-action lawsuit brought against John Hancock Mutual Life
Insurance Company, John Hancock Variable Life Insurance Company,
and John Hancock Distributors, Inc. (collectively "John Hancock"). 
The underlying suit, filed in September 1995 on behalf of nearly
four million present and former policyholders, challenged a number
of John Hancock's sales and marketing practices from 1979 through
the mid-1990s. On June 6, 1997, the putative class entered into a
Stipulation of Settlement with John Hancock. Eventually, the
district court certified the class and approved the settlement,
explaining its reasoning in a comprehensive opinion. See Duhaime
v. John Hancock Mutual Life Ins. Co., 177 F.R.D. 54 (D. Mass. 1997)
("Duhaime I"). Because the particulars of the lawsuit and the
settlement terms are largely irrelevant to our analysis, we refer
interested readers to Duhaime I and confine our focus to facts
pertinent to this appeal.
 After the details of the proposed settlement were
communicated to the class in late June 1997, seventy-seven absent
class members (i.e., class members not named as parties) came
forward and filed written objections. Among the objectors were
appellant Howard M. Metzenbaum and sixteen policyholders
represented by attorney Diane Nygaard. We follow the lead of the
parties and refer to the Nygaard-led group as the "Rose Objectors." 
 Metzenbaum initially took issue with various aspects of
the class notice and with the structure of the proposed counsel-
fees award, but after negotiating changes to the notice procedures
that satisfied his concerns in this area, he chose to press only
his counsel-fees objection. The Rose Objectors filed sweeping
objections to nearly all aspects of the proposed settlement. On
October 24, 1997, the district court held a hearing to evaluate the
fairness of the settlement. See Fed. R. Civ. P. 23(e). Metzenbaum
and the Rose Objectors appeared to present their arguments in
opposition. On December 31, 1997, the court filed separate
memoranda and orders approving the settlement, see Duhaime I, 177
F.R.D. at 72, but altering to some degree the fee-payment structure
conceived by the settling parties, see Duhaime v. John Hancock
Mutual Life Ins. Co., 989 F. Supp. 375, 378-80 (D. Mass. 1997)
("Duhaime II"). In doing so, the court largely sustained
Metzenbaum's objections, see id., but rejected the Rose Objectors'
complaints as lacking in merit, see Duhaime I, 177 F.R.D. at 71-72.
 Shortly after the district court approved the settlement,
Attorney Nygaard, acting on behalf of the Rose Objectors, filed a
request for counsel fees in the district court and a notice of
appeal from the court's approval of the settlement. When
Metzenbaum's counsel learned of the appeal, he telephoned Nygaard
and asked that she serve him with copies of the appellate briefs. 
Nygaard agreed to put Metzenbaum's counsel on the service list, but
added that the appeal soon would be settled on "very, very good"
terms for her clients. Shortly thereafter, the Rose Objectors
withdrew with prejudice both their appeal and their still-pending
request for counsel fees. 
 At this point, Metzenbaum became concerned that something
was amiss because the Rose Objectors apparently had secured a side
settlement more favorable than the class settlement and no court
had evaluated the fairness of the side settlement. In Metzenbaum's
view (elaborated below), a post-judgment settlement of this nature
violates both the letter and spirit of Fed. R. Civ. P. 23(e): "A
class action shall not be dismissed or compromised without the
approval of the court, and notice of the proposed dismissal or
compromise shall be given to all members of the class in such
manner as the court directs." See also In re General Motors Corp.
Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 804-19
(3d Cir. 1995) (Rule 23(e) scrutiny entails a detailed inquiry into
whether the proposed class action settlement is fair, reasonable,
and adequate). Metzenbaum's counsel wrote to Nygaard, class
counsel, and John Hancock's counsel, advising them that the side
settlement should be presented to the district court and asking for
disclosure of its terms. Counsel for the so-called "settling
parties" responded that disclosure and approval were not required
under the circumstances. The responses indicated that, in addition
to resolving the claims of the Rose Objectors, the side settlement
also resolved claims of other clients of Attorney Nygaard who had
opted out of the class. The responses did not, however, disclose
the terms of the side settlement or even the parties to the side
settlement. Metzenbaum suggests that class counsel, as well as
John Hancock, may have been involved in negotiating the side
settlement, and we accept the suggestion for purposes of this
appeal. 
 Metzenbaum then served discovery on John Hancock,
Nygaard, and class counsel, but received replies stating that the
discovery requests were untimely and that, as an absent class
member, he was not a "party" entitled to discovery. Consequently,
Metzenbaum moved the district court to compel post-judgment
discovery under Fed. R. Civ. P. 37 and, in the event the court did
not regard him as a party entitled to discovery, to permit him to
intervene as a party under Fed. R. Civ. P. 24. In making his
motion, Metzenbaum informed the court that, should the requested
discovery reveal a substantial difference between the side
settlement with the Rose Objectors and the settlement offered to
the class, he would file a motion under Fed. R. Civ. P. 60(b)
asking the court either to require John Hancock to offer the same
deal to all class members, including himself, or to abrogate the
Rose Objectors' side settlement and require that the proceeds be
disbursed to the class. John Hancock opposed the motion, pointing
out, inter alia, that the class settlement was entirely unaffected
by the side settlement with the Rose Objectors. The court denied
Metzenbaum's motion by margin order. This appeal, which only John
Hancock actively opposes, followed.
 In framing their appellate arguments, the parties have
sounded broad themes and taken a number of controversial positions. 
Metzenbaum asserts that Fed. R. Civ. P. 23(e) applies even to
settlements concluded on appeal; that in the circumstances
presented here, he was entitled to invoke Fed. R. Civ. P. 37's
enforcement provisions post-judgment; that absent class members
such as himself are "parties" to class actions entitled to
discovery; and alternatively, that he was entitled to intervene as
a party in the district court either as of right, see Fed. R. Civ.
P. 24(a), or by court permission, see Fed. R. Civ. P. 24(b). John
Hancock counters that Metzenbaum lacked Article III standing in the
district court because he failed to allege an injury in fact, i.e.,
that he has suffered, or imminently will suffer, an invasion of a
concrete, particularized, and legally protected interest, see Lujan
v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); that absent
class members are not parties to class actions; that Metzenbaum's
allegations fail to establish an entitlement to intervention,
either as of right or by court permission; and that the district
court in any event properly declined Metzenbaum's request for
discovery because the material sought could provide no basis for
upsetting the judgment. 
 As to whether Metzenbaum had Article III standing, we
think it sufficient to observe that the line of argument set forth
in the motion to compel (and on appeal) necessitates a discussion
of the possibility of a fraud, see infra at 16-18, and that
Metzenbaum, as a class member, has standing to press such an
argument because he has a concrete, particularized, and legally
protected interest in both faithful representation by class counsel
and in not being defrauded by an adverse party, cf. Fed. R. Civ. P.
60(b)(3) (recognizing "fraud . . . misrepresentation, or other
misconduct of an adverse party" as a basis for seeking relief from
judgment). As to the potentially difficult issues of Metzenbaum's
"party" status and right to intervention in order to obtain
discovery, we think they are extinguished for purposes of this case
by our answer to a narrower, logically antecedent question: Must
a district court scrutinize and approve as fair an appellate side
settlement between the parties who have reached a court-approved
settlement of a class action and separately represented class
members who had objected to the settlement prior to its approval? 
Metzenbaum contends that Fed. R. Civ. P. 23(e) and/or general class
action principles derived from the case law give class members like
himself an interest in such scrutiny and approval. But as we
explain below, Metzenbaum reads the authority he cites too broadly. 
Where, as here, the class settlement is unaffected by the side
settlement and there has been no demonstration of a fraud, absent
class members like Metzenbaum simply have no unconditional right to
have a court review and approve as fair the terms of such a side
settlement.
 We start with Metzenbaum's contention that Fed. R. Civ.
P. 23(e) explicitly requires court approval of the side settlement. 
Assuming arguendo that the Rule somehow applies post-judgment to
the compromise of an appeal from a district court's approval of a
class-action settlement, but see Fed. R. Civ. P. 1 ("These rules
govern the procedure in the United States district courts . . . .")
(emphasis supplied), we reject the argument on plain language
grounds. Rule 23(e) only requires court approval of the dismissal
or compromise of "[the] class action" itself; it in no way suggests
that negotiated resolutions of disputes peripheral to the class
action need be approved. It is for precisely this reason that
courts have declined to require full Rule 23(e) approval of
separate merits settlements that class-action defendants have
negotiated with absent class members. See, e.g., In re General
Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1138-40 (7th
Cir. 1979) (judicial examination of such separate merits
settlements is not to ensure the fairness of the settlements, but
only to ensure that the settlement offers provided the absent class
members with sufficient information to make an informed decision
whether to settle or proceed); In re Shell Oil Refinery, 152 F.R.D.
526, 536 (E.D. La. 1989) (same); see generally 2 Herbert Newberg &
Alba Conte, Newberg on Class Actions 11.75, at 11-199 (3d ed.
1992); 7B Charles Alan Wright, et al., Federal Practice and
Procedure 1797, at 377-78 (2d ed. 1986); cf. Weight Watchers of
Philadelphia v. Weight Watchers Int'l Inc., 455 F.2d 770, 773 (2d
Cir. 1972) (Friendly, J.) (declining to require full Rule 23(e)
approval of settlements with potential class members prior to class
certification). Such individual side settlements are just that 
side settlements; they are not a settlement of the class action
itself.
 Metzenbaum also argues that general class action
principles support his proposed disclosure and approval
requirement. In support of his position, Metzenbaum cites a number
of complex litigation cases in which, even though Fed. R. Civ. P.
23(e) did not strictly apply, courts either have required court
scrutiny of or actually scrutinized agreements peripheral to the
class action. Unlike the just-mentioned In re General Motors Corp.
and In re Shell Oil Refinery cases (where, despite the
inapplicability of Rule 23(e), courts scrutinized side settlements
with absent class members to ensure that those class members made
informed settlement decisions), the cases Metzenbaum cites all
involved circumstances in which there were systemic incentives for
class counsel or the named class plaintiffs to act in disregard of
fiduciary duties owed to absent class members in concluding these
peripheral agreements.
 For example, noting "the danger that the lawyers might
urge a class settlement at a low figure or on a less-than-optimal
basis in exchange for red-carpet treatment on fees," Weinberger v.
Great Northern Nekoosa Corp., 925 F.2d 518, 524 (1st Cir. 1991), we
have directed district courts to exercise their equitable
jurisdiction to review counsel-fee arrangements negotiated in
connection with class-action settlements even where the counsel
fees are not taken from a common fund but are instead paid
separately by a class-action defendant, see id. at 523-25. 
Similarly, courts in two recent mass-tort settlements appear to
have required approval of settlements struck between clients of
class counsel who were not members of a class and a party opposing
the class. See Georgine v. Amchem Prods., Inc., 157 F.R.D. 246,
294-99, 307-10 (E.D. Pa. 1994), rev'd on other grounds, 83 F.3d
610, 622 (3d Cir. 1996), aff'd 521 U.S. 59 (1997); In re Asbestos
Litig., 90 F.3d 963, 978-80 (5th Cir. 1996), cert. granted and
judgment vacated on other grounds, 117 S. Ct. 2503 (1997). In each
instance, the court acted out of concern that class counsel's
simultaneous representation of the class and individual clients
outside the class might have given rise to a conflict of interest. 
See Georgine, 157 F.R.D. at 299; In re Asbestos, 90 F.3d at 980. 
And the Fourth Circuit, having reached the controversial conclusion
that Rule 23(e) does not apply prior to class certification, see
Shelton v. Pargo, Inc., 582 F.2d 1298, 1302-04 (4th Cir. 1978),
nonetheless held that pre-certification voluntary dismissals of
claims by the named plaintiffs of a putative class should be
evaluated under the Rule 23(e) paradigm pursuant to the district
court's "supervisory power over and . . . special responsibility in
actions brought as class actions," id. at 1306. In Shelton, the
concern was that a named plaintiff may succumb to self-interest and
settle in such a way as to harm the interests of absent class
members. See id. at 1304-06 & nn. 17-19. 
 But we see no inherent risk of victimization of the
uninformed, convergence of interests of putative adversaries, or
conflict of interests between or among those to whom fiduciary
duties are owed, in an appellate side settlement of the type
Metzenbaum challenges. Tellingly, Metzenbaum does not explain how
a party to or attorney involved in such an appellate side
settlement might be tempted to act in derogation of a fiduciary
duty. This of course means that Metzenbaum has not specified how
class counsel the only persons potentially involved in the side
settlement with fiduciary duties to absent class members like
himself faced systemically generated incentives to violate such
a duty in compromising the Rose Objectors' appeal. Instead,
Metzenbaum derives from the cases just described a broader
principle: a generalized concern on the part of courts that
"similarly-situated class members [be] treated similarly and that
monies paid by the defendants for purposes of settlement inure to
the benefit of all class members." Appellant's Brief at 16; see
also id. at 17, 19, and 23. Using this principle as his point of
departure, Metzenbaum argues that the injury he suffered is his
alleged unequal treatment (in terms of settlement results) vis-a-
vis the Rose Objectors. 
 Metzenbaum's statement of the applicable principle is
sound insofar as it implies that courts are concerned with adequate
and similar results for all similarly situated class members in a
class action settlement. See, e.g., In re General Motors Corp., 55
F.3d at 808 ("One sign that a settlement may not be fair is that
some segments of the class are treated differently from others."). 
Yet this is only because different recoveries for similarly harmed
persons who have remained within the class and are represented by
class counsel (or high attorney-fee awards negotiated in connection
with paltry class settlements) can constitute powerful evidence
that a fiduciary obligation has not been honored. See In re
General Motors Corp., 594 F.2d at 1139 ("Rule 23(e) requires
judicial approval of class action settlements to guard against
possible ineffective representation of absentees' interests by the
representative parties."); see also, e.g., In re General Motors
Corp., 55 F.3d at 809 (courts should "withhold approval from any
settlement that creates conflicts among the class"); Weinberger,
925 F.2d at 524-25 (discussing oversight of attorney-fee agreements
as necessary to prevent class-harming conflicts of interest between
the plaintiff class and class counsel); 7B Wright, et al., Federal
Practice and Procedure 1797, at 340-41 (discussing oversight of
settlements involving representative parties as necessary to ensure
that the representative parties had not become fainthearted or
settled solely out of self-interest). But to the extent that
Metzenbaum reads cases like Weinberger, Georgine, In re Asbestos,
and Shelton as broadly directing courts entertaining class actions
to ensure similar recoveries by all similarly harmed persons within
the original class, regardless of the litigation decisions they
have made, he is wrong. 
 We simply have no tradition of court intervention to
ensure that similarly victimized plaintiffs who have retained
separate counsel and have made different litigation decisions get
similar results. Cf., e.g., Fed. R. Civ. P. 23(c)(2) (requiring
that notice to the class explicitly inform class members that they
may opt out of the class action). Similarly harmed plaintiffs
often secure separate representation and subsequently enter into
materially different settlements with a common defendant. In such
situations, the settling parties have no legally protected interest
in having a court scrutinize each settlement to ensure that all
plaintiffs receive similar consideration for their releases. A
fundamental assumption of our adversary system is that adversaries
represented by persons with presumably undivided loyalties will
tend to negotiate acceptably fair resolutions of their disputes. 
As we have implied, courts oversee class-action settlements only
because factors unique to the class-action context the already-
noted tendency towards a coincidence of interests between class
representatives and the party opposing the class, and the chasm
between representatives and faceless, absent class members call
into question whether the representatives' loyalties are in fact
undivided. 
 We come then to the basic question: Are Metzenbaum and
the Rose Objectors so "similarly situated" that we should view any
difference in their ultimate recoveries as evidence of a
systemically induced breach of a fiduciary duty owed to Metzenbaum
and absent class members? We think the answer clearly is "no." 
Although Metzenbaum and the Rose Objectors are members of the same
class and originally were represented by the same class counsel,
they eventually secured separate representation through which they
took decidedly different positions with respect to the proposed
settlement and opposite positions with respect to the final
judgment. So long as there was no fraud, that the Rose Objectors
might have obtained something in return for eventually dropping
their efforts to disrupt the settlement constitutes no cognizable
injury to Metzenbaum, who has received or will receive the full
benefit of the bargain to which he acquiesced and which the
district court deemed fair under Fed. R. Civ. P. 23(e).
 In his appellate brief, Metzenbaum hints at but does not
fully develop two additional rationales for court intervention
which might be taken as alternatives to his similar-results-for-
the-similarly-harmed argument. The first is that courts should
intervene to prevent possible extortion; the second is that courts
should intervene to prevent possible fraud. Before we conclude, we
believe it important to say a few words about each of these two
arguments.
 The Rose Objectors had little to lose in pressing their
appeal. If they had lost, they would have remained entitled to the
relief secured by the class. If they had won, they almost
certainly would have brought about a more favorable settlement for
the class. See 2 Newberg on Class Actions 11.14, at 11-18 ("In
general, after a class is certified, particularly in a class action
for damages, there is a great likelihood of settlement before trial
because of the increased assessment by defense counsel of exposure
to substantial liability."). In the class-action context, such
little-to-lose situations sometimes cause concern because they
raise the specter of extortive legal proceedings pressed "not to
redress real wrongs, but to realize upon their nuisance value." 
Cohen v. Beneficial Loan Corp., 337 U.S. 541, 548 (1949)
(acknowledging the incentives management sometimes has to settle
"strike suits" brought as shareholder derivative actions). While
we have no reason to believe that the Rose Objectors or Attorney
Nygaard extorted their appellate settlement, we recognize that a
class member and his or her attorney conceivably could object to a
proposed settlement solely to set up an appeal designed to obtain
a nuisance value recovery and/or advantageous fee arrangement. We
also recognize that, in Weinberger, a concern with deterring
extortionate settlements partially informed our decision to subject
to district court scrutiny all fee arrangements negotiated in
connection with class-action settlements. See 925 F.2d at 524-25. 
 Metzenbaum mentions the possibility of extortion in
connection with the side settlement of the Rose Objectors' appeal. 
But in doing so, he neither argues that extortion might have caused
class counsel to bargain away some portion of the class's
negotiated recovery nor seeks to assert a third-party interest 
e.g., the interest John Hancock (the party most obviously
positioned to press an extortion argument under the circumstances)
might have in not being subjected to an extortionate appeal on
grounds that John Hancock is unlikely to seek court review of the
side settlement. Instead, Metzenbaum merely suggests that
extortion of this type will cause a party opposing a class action
to hold back funds that otherwise might have been offered to the
class in the class settlement. Disclosure and approval is needed,
he suggests, to ensure that the class has access to these funds in
settlement negotiations.
 We think that this line of argument is answered by what
we already have stated. Courts examine the fairness of certain
class-related settlements because it is thought that, fiduciary
obligations notwithstanding, circumstances unique to the complex
litigation context sometimes tempt class counsel and/or named class
plaintiffs to conclude settlements that are not in the best
interests of absent class members. In these situations, courts
assess whether the settlements are fair, reasonable, and adequate,
see, e.g., In re General Motors Corp., 55 F.3d at 804-19, because
fair settlements can more confidently be regarded as having been
negotiated in compliance with the class representatives' fiduciary
duties. But so long as the class settlement remains unaffected,
nothing about the settlement of an extortionate appeal by
separately represented, objecting, absent class members logically
calls into question whether the class has been faithfully served by
its representatives. Such a settlement thus would not give a class
member the right to invoke Fed. R. Civ. P. 23(e) and its related
doctrines as a means of creating a bigger settlement pie post-
judgment, at least under the rationale alluded to here. 
 Of course, matters could be different if there were some
indication that the side settlement of an appeal was a vehicle for 
implementing or furthering a fraud. Unlike an appellate side
settlement which at the very most merely hints that the class might
have been able to obtain more in the class settlement, a fraud-
masking appellate settlement should be understood to involve
affirmative deceit upon the class or court e.g., use of the
recipient of the appellate settlement as a payment conduit between
the party opposing the class and class counsel in an end run around
a lower court's counsel-fees ruling. Seizing on the many cases
which mention the prevention of "collusion" between class counsel
or class representatives and the party opposing the class as a
justification for court scrutiny of class-action settlements and
peripheral agreements negotiated in connection with class-action
settlements, see, e.g., In re General Motors Corp., 55 F.3d at 805;
Weinberger, 925 F.2d at 924-25; Georgine, 157 F.R.D. at 311,
Metzenbaum appears to suggest that appellate side settlements of
the sort we consider should be subject to scrutiny and approval as
a means of detecting whether they are masking a fraud.
 But after final judgment has entered, our strong
interest in the finality of judgments leads courts to intervene in
a search for evidence of fraud only if there has been some showing
that a fraud actually has occurred. See H.K. Porter Co. v.
Goodyear Tire & Rubber Co., 536 F.2d 1115, 1118-22 (6th Cir. 1976)
(discovery in aid of a motion attacking a final judgment on the
basis of fraud should be permitted only if there is some evidence
of fraud); see also Midwest Franchise Corp. v. Metromedia
Restaurant Group, Inc., 177 F.R.D. 438, 440 (N.D. Iowa 1997) (prima
facie showing of fraud required); United States ex rel. Free v.
Peters, 826 F. Supp. 1153, 1154 (N.D. Ill. 1993) (same). Plainly,
there has been no such showing here. In making this point, we
emphasize that a court's obligation to scrutinize class-action
settlements and some agreements peripheral to class-action
settlements for evidence of collusion, see, e.g., In re General
Motors Corp., 55 F.3d at 805; Weinberger, 925 F.2d at 924-25, does
not in some way trump the systemic interest in finality of
judgments an interest that might be thought particularly strong
in the class-action context, see Valerio v. Boise Cascade Corp., 80
F.R.D. 626, 647 (N.D. Cal. 1978) (finality considerations are "even
more pressing in the class action context" because of the number of
people the final judgment affects). Thus, it does not open the
door to post-judgment discovery where there is nothing more than
speculation that a fraud might have occurred. 
 Affirmed. Costs to appellees.